## Labuck v. Mill Creek Coal Company.

*Workmen's compensation—Injury from act in violation of rule of manufacturer of explosive—Anthracite Act of June 2, 1891—Legislation—Delegation of authority.*

1. Rules made by the manufacturer of explosives for using such explosives are not a proper part of the Act of June 2, 1891, rules 29 and 54, § xii, P. L. 176, and a failure by a workman to obey the rules will not amount to a violation of the act so as to bar a claim for compensation for an injury which he thereby sustains.

2. The manufacturer of explosives cannot write into the criminal law of the State a law that will visit upon a workman a penalty for the violation of its own rule, and the provisions of the act which attempt to permit the manufacturer to do so are an attempt by the legislature to delegate its authority.

*Workmen's compensation—Loss of eye—Award—Modification.*

3. An award of $12 a week until such time as claimant's condition of total disability shall terminate will be modified and compensation will be allowed for at least 125 weeks where the loss of an eye is one of the injuries sustained.

Appeal from decision of the Workmen's Compensation Board. C. P. Schuylkill Co., March T., 1927, No. 539.

*Roger Dever,* for plaintiff; *M. M. Burke,* for defendant.

KOCH, J., June 6, 1927.—The referee had found that the claimant and his fellow-workman had drilled four holes in the face of a gangway and had loaded them with Hercules dynamite; that one of the shots had been lit and the plaintiff and the workman went to a safe place in the mine to wait until the shots were exploded. Two of the shots exploded and the cap in another shot. The two men mistook the two shots for three. They waited twenty minutes, when they opened the compressed-air line and blew out the smoke. After that they went into the gangway to ascertain which of the holes misfired, and, while they were examining, the fourth charge exploded, injuring the claimant severely and killing his fellow-workman. The claimant's injuries consisted of a very badly injured left leg, a fracture of the skull and the loss of his right eye. The referee found that, "at the time the claimant was injured, the defendant company had posted, in accordance with rules 29 and 54 of article 12 of the General Rules of the Anthracite Mining Laws of Pennsylvania, rules for the transporting, storing, handling, thawing and using

Hercules high explosives." Under the heading of "Firing," the rules of the Hercules Powder Company provide that, "when fuse and blasting caps are used, never return to a misfire until the following day."

The referee disallowed the claim on the ground that the claimant violated the provisions of the Act of June 2, 1891, P. L. 176, which is "An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania, and for the protection and preservation of property connected therewith." The 12th article of the act consists of general rules, and the 29th of said rules provides that: "When high explosives, other than gunpowder, are used in any mine, the manner of storing, keeping, moving, charging and firing, or in any manner using such explosives, shall be in accordance with special rules as furnished by the manufacturers of the same. The said rules shall be endorsed with his or their official signature and shall be approved by the owner, operator or superintendent of the mine in which such explosives are used." Rule 54 provides for the posting, at the mines or collieries, of abstracts of the act and of the rules. The referee found that such posting was done, but the board could not agree with such finding. It reversed the finding of the referee and awarded "$12 a week to the claimant from June 1, 1926, until such time as his condition of total disability shall terminate."

The Compensation Board, in an opinion by Walnut, Chairman, came to the conclusion that the Hercules Powder Company cannot write into the criminal law of the State a law that will visit upon a workman a penalty for the violation of its own rule. It grounded its opinion on the case of O'Neil v. Insurance Co., 166 Pa. 72, in which it is held that the legislature cannot delegate its power and that it alone must exercise legislative power; that the "law must be complete in all its terms and provisions when it leaves the legislative branch of the government, and that nothing must be submitted to the judgment of the electors, or other appointees, except an option to become or not to become subject to its requirements and penalties." The O'Neil case concerns the making of a standard fire insurance policy by the Insurance Commissioner of the State. This was regarded by the Supreme Court as a surrender of the power of the legislature, because, "by its provisions, the legislature says in effect to its appointee: 'Prepare just such a policy or contract as you please. We do not care what it is. The Governor shall have no opportunity to veto it. File it in your own office, and we will compel its adoption, whether it is right or wrong, by the punishment of every company officer or agent who hesitates to use it.' "

So here, the manufacturer of high explosives would undertake to make rules for using such explosives and would make the violation of its rules an offence against the law of the State, because rule 58 of the General Rules of said Mine Act says: "Every person who fails to comply with any of the foregoing rules, or any of the provisions of this article, shall be guilty of an offence against this act." And, if guilty under the provisions of the act, the offender would forfeit his right to recover compensation: Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84; Pokis v. Buck Run Coal Co., 286 Pa. 52; Curran v. Vang Construction Co., 286 Pa. 245, and Koser v. Philadelphia and Reading Coal and Iron Co., 21 Schuyl. Legal Rec. 225.

We think the conclusion of the Workmen's Compensation Board is correct and that the claimant is entitled to compensation, but the award as made by the board will be modified, because, under the provisions of the Act of June 26, 1919, P. L. 642, 645, the claimant must be allowed compensation for at least 125 weeks because of the loss of an eye.

Labuck v. Mill Creek Coal Company.

The exceptions are dismissed, the award of the Compensation Board is affirmed, and the prothonotary is directed to enter judgment in favor of the plaintiff for the sum of $12 a week from June 21, 1926, during a period of 125 weeks, and if the claimant's total disability is not terminated at the end of that time, then the defendant to pay to the claimant the sum of $12 a week until his total disability shall terminate, not, however, to exceed a total period of 416⅔ weeks, nor the total sum of $5000.