# Haas *v.* Brotherhood of Transportation Workers, Appellant.

Argued September 26, 1945. Before BALDRIGE, P. J.,
RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*George H. Detweiler,* for appellant.

*Abraham Wernick,* with him *Jacob Liebman,* for appellee.

OPINION BY ROSS, J., December 12, 1945:

Appollonia Haas, widow of Harry Haas, filed a petition under the Workmen's Compensation Act asking

compensation for herself and certain minors to whom Haas had stood in loco parentis. After a number of hearings, the referee dismissed the petition which was affirmed by the board. The Court of Common Pleas No. 6 of Philadelphia County reversed the board and entered judgment for the plaintiff and ordered the record returned to the board for the purpose of computing the amounts due the claimants and this appeal followed.

The question to be decided by this Court is whether claimant's decedent was in the course of his employment when injured; and that is a question of law and as such open to review. *Callihan v. Montgomery*, 272 Pa. 56, 115 A. 889; *Maguire v. James Lees & Sons Co.*, 273 Pa. 85, 116 A. 679; *Krapf v. Arthur*, 95 Pa. Superior Ct. 468.

The burden of proof was upon the claimant to offer proof sufficient to sustain a finding that her husband's death resulted from an accident sustained in the course of his employment. *Mauchline v. State Insurance Fund*, 279 Pa. 524, 124 A. 168; *Seitzinger v. Fort Pitt Brewing Co.*, 294 Pa. 253, 144 A. 79. It is not necessary to hold that the accident arose from the employment, but the claim is compensable if shown to have occurred in the course thereof. *Hale v. Savage Fire Brick Co.*, 75 Pa. Superior Ct. 454; *Hopwood v. Pittsburgh*, 152 Pa. Superior Ct. 398, 33 A. 2d 658. We are of the opinion that the claimant met the burden placed upon her.

For some time prior to September 4, 1937, Harry Haas had been employed as janitor and handyman in the headquarters of the defendant union in Philadelphia. His duties required him to dust, clean, empty waste baskets and perform other duties in various parts of defendant's building. On September 4, 1937, while decedent was working as janitor in defendant's headquarters, he went into the reception room of the headquarters and while there was approached by one Edward Hunt, a trucking contractor, who had called at the office of the union to see any union official relative to

straightening out a matter between him and the union. The decedent advised Hunt that no officials of the defendant company were present and an argument concerning the matter ensued between Hunt and the deceased. Hunt called the decedent a vile name and thereupon the decedent hit Hunt upon the jaw, knocking him against the wall. Hunt drew a revolver, drove decedent toward the door, and then shot him in the back before he got out of the room, causing his death a few days later of pulmonary hemorrhage.

Article III, section 301 of the Workmen's Compensation Act provides that "The term 'injury by an accident in the course of his employment', as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment", and the compensation authorities concluded that Haas' injury came within this exception.

In *Meucci v. Gallatin Coal Co.,* 279 Pa. 184, 123 A. 766, a dispute arose between the claimant and one Crompton and in the course of the argument Crompton used offensive language, whereupon he was struck by the claimant, and in turn hit the latter, knocking him down causing a loss of the sight of his eye. Compensation was allowed. The Supreme Court, speaking through Mr. Justice SADLER at p. 187 said "That anger was excited by the controversy between those engaged is doubtless true, but the trouble had its origin in the service, and was therefore compensable, the attack having been upon property used by the company in the carrying on of the particular business." In *Schueller v. Armour & Co.,* 116 Pa. Superior Ct. 323, 176 A. 527, an altercation arose between the decedent and a fellow employee concerning the use of an elevator on the premises. The argument became heated, blows were struck, and one was killed. Compensation was allowed. This Court said, at p. 328: "Nowhere in the record does it appear that any

previous animosity or personal hostility existed between decedent and Pincus. . . . Even assuming that decedent struck the first blow, it still was an altercation which grew out of the business and not as the result of a personal animosity." The record in this case is devoid of any evidence that the shooting was intended to injure decedent "because of reasons personal to him and not directed against him as an employee or because of his employment". There is nothing to indicate that Haas and Hunt knew each other or had ever seen each other prior to their argument on September 4, 1937, or that there existed between them any grudge, animosity, or any other personal reasons whatsoever for their quarrel. The subject matter of the dispute leading to the fatal shooting was whether any union official or delegate, with whom the slayer expressed a desire to speak relative to the defendant's business, was in the defendant's headquarters. It is clear from the record that the quarrel was not with respect to any of the decedent's personal affairs but arose from a difficulty related to the course of employment, i. e., Haas' failure to locate a delegate or official of the defendant company for whom Hunt was looking.

The burden rested on the defendant to show that the claim came within the exception to liability and that the injury resulted from an attack arising from personal difficulties and not because of Haas' employment. *Meucci v. Gallatin Coal Co.*, supra; *Larkins v. Bryant Air Conditioning Corp. et al.*, 133 Pa. Superior Ct. 423, 2 A. 2d 868; *Keyes v. Railway Co.*, 265 Pa. 105, 108 A. 406; and in this case the defendant has not met that burden.

Under the Workmen's Compensation Act, the injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises are subject to these limitations (1) that the employee's presence must ordinarily be required at the place of injury,

or (2), if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment. The incident necessary to constitute a break in the course of employment must be of pronounced character. *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 139 A. 192. Whether or not the underlying findings of fact are sufficient to bring the case within the statutory limitations of "course of . . . employment" under section 301 of the Workmen's Compensation Act is a question of law to be reviewed by the courts. *Lewis v. Capital Bakers, Inc., et al.,* 144 Pa. Superior Ct. 171, 18 A. 2d 883; *Boyd v. Philmont Country Club et al.,* 129 Pa. Superior Ct. 135, 195 A. 156.

There is no evidence in the record to sustain the seventh and eighth findings of fact of the referee that the decedent's presence was not ordinarily required at the place of his injury and that he departed from his usual place of employment. In his third finding of fact the referee found that "the decedent while working as a janitor in the headquarters of the defendant . . . was approached by one Edward Hunt, who inquired for a delegate of the union", and in his fifth finding of fact "that the claimant's decedent was employed as a janitor and handyman in a building operated by the defendant. As such the decedent was at proper times required to dust, clean, empty waste baskets and perform other duties *in all parts of said building".* (Italics supplied.) It is in evidence that the decedent "was all over the place"; that he cleaned up, ran errands, got lunches, wiped cars and ran errands for the delegates or clerks and anybody at all that wanted him so to do. Moreover, an employee may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place, yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof. *Hale v. Savage*

*Fire Brick Co.,* supra; *Haywood v. Henrietta Coal Co. et al.,* 118 Pa. Superior Ct. 371, 180 A. 34. In considering the legal aspect of the question, whether or not underlying facts reported by the referee are sufficient to bring the case within the definition of the phrase "course of employment" in our compensation Act, we are required to keep in mind the liberal construction that the courts place upon this statutory definition. *Dzikowska v. Superior Steel Co.,* 259 Pa. 578, 103 A. 351; *Dunphy v. Augustinian College of Villanova,* 129 Pa. Superior Ct. 262, 195 A. 782. Certainly the deceased was acting within the course of his employment and in furtherance of his employer's business when he answered Hunt's inquiry as to whether or not any officials of the defendant company were in the building. It is clear from a reading of the record that the compensation authorities based their conclusion that Haas had abandoned his employment upon the fact that, during the course of the argument with Hunt, Haas struck the first blow. The fact that the decedent struck first was not such an assault in this case as to exclude his dependents from compensation. *Dalton v. Gray Line Motor Tours,* 95 Pa. Superior Ct. 289; *Schueller v. Armour Co.,* supra.

The appellant contends that when the deceased employee struck Hunt he committed assault and battery and, therefore, received an injury on the commission of an act which is in direct violation of the law, and cites, inter alia, *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 139 A. 192, in which the Supreme Court, speaking through Mr. Justice KEPHART, said at p. 484 that "course of employment does not include injuries received in the commission of an act in direct violation of the law." The defense that the decedent sustained his injuries in the commission of an act in direct violation of the law is an affirmative one with the burden resting on the defendant to establish it by such a clear preponderance of evidence that at least it approximates **that required in criminal cases.** *Bucci et ux. v. Lincoln*

*Coal Co. Inc. et al.,* 140 Pa. Superior Ct. 538, 14 A. 2d 359; *Skiba v. Nick Calvitti Coal Co. et al.,* 153 Pa. Superior Ct. 628, 34 A. 2d 921; *Gima v. Hudson Coal Co.,* 106 Pa. Superior Ct. 288, 161 A. 903.

In a statement made by Haas to police officers after the shooting and while he was in the hospital, Haas in response to the question "You saw him (Hunt) drawing the revolver?", answered, "Yes, that's when I hit him". This, if believed by a jury, would be a defense to an indictment charging Haas with assault and battery. However, the weakness of appellant's contention lies in the fact that, even if we assume that Haas, when he struck Hunt, violated the law against assault and battery, the record shows that he did not receive his injuries *while committing the assault.* The evidence is that Hunt drew a revolver, drove those in the room toward the door and then shot Haas before he got out of the room; and the hospital records show that Haas was shot in the back. Consequently, the offense, if any, had been committed and *had been completed* before Haas received the injuries which resulted in his death. Clearly, also, Hunt did not shoot in self-defense.

In *Curran v. Vang Construction Co.,* 286 Pa. 245, 133 A. 261, at p. 250, Mr. Justice WALLING, in commenting upon *Meucci v. Gallatin Coal Co.,* said "That case might well stand on the ground that the foreman went beyond the right of self-defense and thereby committed an independent crime, as a simple assault and battery will not excuse a mayhem or other grievous bodily harm."

In the *Curran* case, supra, claimant's decedent "came in with a large butcher knife in his hand, and approached Smith with threats and menaces, who, deeming his life in danger, as he was very small and Curran very large and armed with a butcher knife, which he declared he would not drop until he had fixed Smith, the latter shot him with a revolver, inflicting a mortal wound." The Supreme Court denied compensation on the ground that

where a workman meets his death on his employer's premises and in working hours while *committing* or *attempting to commit* a felony, no compensation can be awarded to his dependents, and laid down the rule that an injury sustained by an employee, although on the master's premises and in working hours, is not compensable *if at the time* the employee was committing a criminal offense. In *McDevitt v. Checker Cab Co.*, 288 Pa. 394, 136 A. 230, claimant's decedent and a fellow employee engaged in an argument. This precipitated a fight in which McDevitt, claimant's decedent, was the aggressor and during which he was shot and killed by the fellow employee. Mr. Justice WALLING at p. 397 stated, "Furthermore, by committing so grievous a battery as rendered the fatal shot *an act of self-defense,* McDevitt, for the time lost his status as an employee and became a criminal; hence no compensation can be recovered for his resulting death." (Italics supplied.) Cf. *Walcofski v. Lehigh Valley Coal Co.*, 278 Pa. 84, 122 A. 238; *Shoeffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 A. 192; *P. Gima v. Hudson Coal Co.*, 106 Pa. Superior Ct. 288, 161 A. 903 *Demark v. Pittston Co.*, 131 Pa. Superior Ct. 49, 198 A. 818, in which employees sustained injuries *while committing* acts in violation of the Anthracite Mine Law and compensation was denied.

In support of its contention that because Haas might have been indicted for assault and battery the claim in this case is not compensable, the appellant relies upon *Beamer v. Stanley Co. of America*, 295 Pa. 545, 145 A. 675, but that case has no applicability to the facts of the present case. In that case Mr. Justice KEPHART stated, "Deceased had in his possession a firearm, *a dangerous weapon.* He was oiling it, or playing with it, at a place where many people were present. Carelessness in the handling or use of firearms in a place where the accidental discharge of the piece may do injury is wanton negligence, and the accidental discharge of such a weapon to another's injury would subject the party to indictment.

*But the case need not be put on this ground. No duty was assigned to him requiring the use of a gun. The weapon was carried without defendant's authority, and against its wishes.* Deceased met death accidentally while on the premises, but as the result of a commission of an act which bore no relation to his employment." (Italics supplied.) In the instant case Haas was not injured by a "dangerous weapon carried without defendant's authority and against its wishes". He was not injured by his own act, and he was not injured while *committing* an indictable offense. The claimant in the *Beamer* case did not commit an indictable offense but the appellant is apparently misled by the statement in the Court's opinion to the effect that if the claimant in that case had accidentally discharged the weapon to another's injury he would have been subject to indictment.

Section 301, Article III, of the Workmen's Compensation Act, which refers to the term "injury by an accident in the course of his employment", includes every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto. *Callihan v. Montgomery,* supra; *Boyd v. Philmont Country Club,* supra. In this case the deceased employee at the time of the accident was on the premises of his employer during his regular working hours and his presence on the premises was required by the nature of his employment. He was not engaged in a personal argument within the meaning of the exception in the Workmen's Compensation Act; he was not violating any law and he had not abandoned his employment when he received his injuries and, therefore, the claim is compensable.

Where a court of common pleas reverses a board on a question of law it is not necessary that the record be remitted for further finding; judgment may properly be entered in favor of the party entitled thereto. *Strunk v. E. D. Hoffman & Sons,* 144 Pa. Superior Ct. 429, 19 A. 2d 539; *Hein v. Ludwig,* 118 Pa. Superior Ct. 152, 179 A. 917.

Judgment of the court below is affirmed.