Charles HABIB, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (JOHN ROTH PAV-
ING PAVEMASTERS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 2011.
Decided Aug. 12, 2011.
Publication Ordered Oct. 20, 2011.

Daniel I. Herman, New Castle, for petitioner.

Ralph J. Saunders, Jr., Pittsburgh, for respondent John Roth Paving Pavemasters.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Charles Habib (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) reversing the determination of a Workers' Compensation Judge (WCJ) that granted Claimant's Claim Petition (Petition). On appeal, Claimant argues that the Board's order should be reversed because: (1) the Board abused its standard of review; and (2) Claimant's injury occurred in the furtherance of Employer's business or affairs and, therefore, was compensable.

Claimant worked as a laborer for John Roth Paving Pavemasters (Employer) when he sustained a laceration to his right eye while on a job site on May 23, 2008, resulting in a total loss of that eye. Following the injury, Claimant filed the Petition on June 24, 2008, alleging that he sustained a work-related injury in the course and scope of his employment. Employer filed a timely answer on July 10, 2008. The matter was assigned to a WCJ, who held hearings at which Claimant and Employer presented evidence.

Claimant testified that on the date of the incident, while the crew was awaiting delivery of another truckload of asphalt, a bowling ball was found next to the parking lot where they were working. (FOF ¶ 2.) After a round of shot-put, a challenge arose to see if anyone could break the bowling ball with a sledge hammer. (FOF ¶ 2.) Claimant then swung the sledge hammer towards the bowling ball, which then cracked. (FOF ¶ 2; Hr'g Tr. at 12, August 4, 2008, R.R. at 28.) Claimant struck the ball a second time, causing a piece of the bowling ball to break off and strike him in the eye. (FOF ¶ 2; Hr'g Tr. at 12, R.R. at 28.) Claimant testified that, as a result of the strike, he sustained a laceration to his right eye, which resulted in the loss of Claimant's eye. (FOF ¶ 2.)

Employer did not dispute the mechanics of the injury, (FOF ¶ 4), but presented testimony by the foreman from the job site, Jeffrey Gould (Foreman), in opposition to the Petition, (FOF ¶ 3). Foreman denied issuing the challenge to break the bowling ball with the sledge hammer. (FOF ¶ 3.) Foreman then testified that, in

between striking the bowling ball, he told Claimant to "knock it off, or stop." (FOF ¶ 3; Hr'g Tr. at 9, October 3, 2008, R.R. at 48.) Foreman also testified that he informed Claimant that he would not take Claimant to the hospital if Claimant were injured. (FOF ¶ 3.)

Based upon this testimony, the WCJ granted Claimant's Petition. (FOF ¶ 4.) The WCJ distinguished Claimant's case from *Carland v. Vance,* 138 Pa.Super. 47, 10 A.2d 114 (1939), stating that, in *Carland,* the claimant took deliberate steps that would and did result in serious injury. (FOF ¶ 4 (citing *Carland* ).) The WCJ found that Claimant did not deliberately put himself at risk of injury, but was merely careless. (FOF ¶ 4.) This carelessness, the WCJ opined, did not take Claimant outside of the scope of his employment. Further, the WCJ disagreed with Employer that Claimant violated a positive work order. (FOF ¶ 4.) The WCJ held that although Foreman had issued a direct warning, it was not made sufficiently in advance to be considered a positive work order under the law. (FOF ¶ 4.) The WCJ was more persuaded by Claimant's argument that an employee does not depart from being engaged in the furtherance of the business or affairs of their employer during intervals of leisure during work. (FOF ¶ 4.)

From that factual foundation, the WCJ held that Claimant had sustained his burden of proof in support of his Petition. (Conclusion of Law (COL) ¶ 1.) While acknowledging that Employer's "contentions have not been without merit," the WCJ held that Employer failed to sustain its burden of proof. (COL ¶ 2, 3.) Therefore, the WCJ granted Claimant's Petition. (COL ¶ 1.)

■ Employer then appealed to the Board, arguing, *inter alia,* that Claimant violated a positive work order and, therefore, his injuries were not compensable. After reviewing the record and findings of fact, the Board agreed with Employer that Claimant was not entitled to workers' compensation benefits because he acted in violation of a positive work order. (Board's Op. at 3.) The Board stated that the WCJ's findings that: "(1) . . . Claimant's conduct 'was not without consequence' . . .; (2) . . . Claimant was given a supervisory directive to 'knock it off;' and, (3) . . . the 'conduct giving rise to his injury was clearly not connected to his work duties,' " met all of the elements required to establish a positive work order. (Board's Op. at 5 (quoting FOF ¶¶ 3, 4); *see Johnson v. Workers' Compensation Appeal Board (Union Camp Corporation),* 749 A.2d 1048, 1051 (Pa.Cmwlth.2000) (setting forth the criteria for an employer's defense based on a violation of a positive work order).) The Board agreed with the WCJ's statement that a positive work order must be "effectively communicated." (Board's Op. at 6.) However, the Board disagreed with the WCJ's legal conclusion that the positive work order was legally insufficient to support Employer's burden of proof based on the WCJ's belief that the order was given too late. (Board's Op. at 6.) Rather, the Board held the order issued by Foreman legally sufficient because it was given immediately prior to the event that caused Claimant's injury—the second time Claimant struck the bowling ball with the sledge hammer. (Board's Op. at 6.) Based on this conclusion, the Board reversed the WCJ's order granting the Petition. Claimant now petitions this Court for review of the Board's order.[1]

---

1. "[O]ur standard of review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings

Claimant argues that the Board exceeded its scope of review in this matter where the Board took a "pick and choose" approach to the WCJ's factual findings by relying on a select few to make its contrary determination. (Claimant's Br. at 14.) This, according to Claimant, resulted in a decision "inconsistent with [the WCJ's] decision and "violat[ed] the express requirements of *Universal Cyclops Steel [Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa. Cmwlth. 176, 305 A.2d 757 (1973) ]." (Claimant's Br. at 14.) Claimant also asserts that the Board did not give the proper weight to the facts and credibility determinations of the WCJ. (Claimant's Br. at 15–16.)

In *Universal Cyclops*, this Court stated that the WCJ was the ultimate fact finder, but that the Board can "consider whether any conclusion reached by the [WCJ] constitutes an error of law." 305 A.2d at 761. This Court, in *Universal Cyclops*, held that the Board could not reverse findings of fact regarding the causation of the injury in question made by the WCJ. *Id.* at 762. In that decision, however, our Court also stated that both the WCJ and Board erred by treating the issue of whether the claimant was in the course of his employment at the time of the injury as a matter of fact. *Id.* Thus, the question of whether a claimant was in the course and scope of his employment is a *question of law* over which the Board, and this Court, have plenary review on appeal. *Id.*

Here, contrary to Claimant's assertions, the Board's determination was not based on a deviation from the WCJ's findings of fact, but based on its application of the law regarding the violation of positive work orders to the facts as found by the WCJ. The Board did not make additional find-ings of fact, reject the WCJ's findings of fact, or reinterpret the WCJ's findings of fact. We note that Claimant cites no specific instance where the Board overlooked, reinterpreted, or presented new findings of fact, but argues, instead, that the Board "merely applie[d] facts ... to the law and then conclude[d] that [the WCJ] was incorrect in his factual application ... to the law." (Claimant's Br. at 16.) This is precisely the purpose of the Board's review. *Universal Cyclops*, 305 A.2d at 760. Accordingly, we conclude that the Board did not selectively ignore the facts but, rather, acted within its scope of review in determining whether, based on the findings of fact, the WCJ's legal conclusion on the positive work order issue was erroneous as a matter of law.

Claimant also contends that the Board erred by not giving Claimant's testimony the proper weight and merit and by challenging the WCJ's credibility determinations. (Claimant's Br. at 15–16.) Claimant admits that the WCJ made no explicit determinations on credibility, but contends that, because the WCJ found in his favor, his testimony was more credible than Foreman's testimony and, therefore, any reliance on Foreman's testimony that he directed Claimant to "knock it off" infringed on the WCJ's credibility determination. (Claimant's Br. at 15.)

Claimant is correct that "the WCJ has the exclusive province to determine the credibility of witnesses and to resolve conflicting evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 983 (Pa.Cmwlth.1997). In our standard of review, we must "view the evidence in the light most favorable to the prevailing party." *Lehigh County Vo–Tech School v.*

were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal*

*Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa.Cmwlth.1997).

*Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 328, 652 A.2d 797, 800 (1995). The WCJ did not make any credibility determinations because the WCJ found both Claimant and Foreman credible. The WCJ stated in his findings of fact that Foreman issued the directive, but concluded that the directive was not legally sufficient to constitute a positive work order. (FOF ¶ 4.) Therefore, the WCJ did credit Foreman's testimony that he told Claimant to "knock it off, or stop." (FOF ¶ 3.) Accordingly, the Board neither altered the WCJ's credibility determination nor made an error of law in relying on this fact found by the WCJ when making its contrary conclusion.

■ Claimant next contends the Board erred in holding that Claimant violated a positive work order, thereby precluding him from receiving benefits. Claimant maintains that this conclusion is not supported by the law or the WCJ's findings of fact.

■ Claimant bears the initial burden of proving a right to compensation and "proving all necessary elements to support an award." *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 141, 634 A.2d 592, 595 (1993). Once that burden is met, the burden shifts to employer to prove, in defense, that a claimant was in violation of a positive work order when the claimant was injured. *City of New Castle v. Workmen's Compensation Appeal Board (Sallie)*, 118 Pa. Cmwlth. 51, 546 A.2d 132, 134 (1988). In order to assert this defense, the employer must prove: "(1) the injury, was in fact, caused by the violation of the order or rule . . .; (2) the employee actually knew of the order or rule . . .; and (3) the order or rule implicated an activity not connected with the employee's work duties." *Johnson*, 749 A.2d at 1051 (citations omitted). "The affirmative defense that a claimant's

act violated a positive [work] order . . . is essentially a claim that the injury which a claimant sustained . . . was not an injury which arose in the course of employment." *Id.* " '[A]cts which are in direct hostility to, and in defiance of, positive orders of the employer . . . are not compensable.' " *Camino v. Workers' Compensation Appeals Board (City Mission and MCRA, Inc.)*, 796 A.2d 412, 417 (Pa.Cmwlth.2002) (quoting *Dickey v. Pittsburgh & Lake Erie R.R. Co.*, 297 Pa. 172, 174, 146 A. 543, 544 (1929)).

Here, the WCJ found that Foreman told Claimant to "knock it off, or stop" before Claimant struck the bowling ball for the second time, which resulted in the injury to Claimant's eye. (FOF ¶ 3.) As noted above, the WCJ acknowledged that Foreman gave this order, but the WCJ felt that the order was not given sufficiently in advance to constitute a positive work order that would preclude Claimant from receiving benefits. (FOF ¶ 4.) On appeal, the Board, observing that the WCJ accepted Foreman's testimony about directing Claimant not to strike the bowling ball again, held that the WCJ erred in applying the law to his findings. We agree with Employer that, based on the facts found by the WCJ, the Board did not err in concluding that Employer met its burden of proving that Claimant was injured while violating a positive work order. (Employer's Br. at 11, 12.)

As noted above, there are three criteria for establishing a positive work order violation. First, the injury must be caused by the violation of the work order. *Johnson*, 749 A.2d at 1051. Here, Claimant struck the bowling ball with a sledge hammer, which shot a piece of the ball into Claimant's eye. (FOF ¶ 2.) Claimant was then injured by that activity. (FOF ¶ 3; Hr'g Tr. at 10–11, October 3, 2008, R.R. at 49–50.) The issue of causation is undisput-

ed. (FOF ¶ 4.) Second, the employee must actually know about the order. *Johnson*, 749 A.2d at 1051. Here, the WCJ found that Claimant was specifically told by Foreman to "knock it off." (FOF ¶ 4.) Claimant struck the bowling ball after Foreman gave a directive to stop and issued a warning. (FOF ¶ 3; Hr'g Tr. at 9, R.R. at 48.) Third, the order must implicate an activity not connected with the employee's work duties. Here, the WCJ found that the activity of hitting the bowling ball was "clearly not connected to [Claimant's] work duties." (FOF ¶ 4.) Accordingly, because Employer established all of the elements necessary to prove that Claimant's injury occurred while he violated a positive work order, Claimant was not injured in the course and scope of his employment and is precluded from receiving benefits. *Camino*, 796 A.2d at 417 (quoting *Dickey*, 297 Pa. at 174, 146 A. at 544); *Johnson*, 749 A.2d at 1051.[2]

Accordingly, the order of the Board is affirmed.

### ORDER

**NOW,** August 12, 2011, the order of the Workers' Compensation Appeal Board in the above-captioned matter is **AFFIRMED.**

---

**2.** Claimant also argues that his actions were in the furtherance of Employer's business or affairs; however, because we conclude that

Claimant violated a positive work order and is, thus, ineligible for workers' compensation benefits, we need not address this issue.